Ronald Geman, Plaintiff-Appellant,
v.
Buster McLaury, Elwood Allen, Markel Insurance Company, and XYZ Insurance Company, Defendants-Respondents.
No. 2003AP3060.
Court of Appeals of Wisconsin.
Opinion Filed: April 13, 2005.
Before Anderson, P.J., Brown and Snyder, JJ.
¶1 PER CURIAM.
Ronald Geman appeals from an order granting summary judgment to Buster McLaury, Elwood Allen and Markel Insurance Company and dismissing his claims arising from a June 2000 fall from his horse on Allen's farm during a horsemanship clinic being run by McLaury. We agree with the circuit court that McLaury and Allen are immune from liability under the equine immunity statute, Wis. Stat. § 895.481 (1999-2000),[1] and we affirm.
¶2 In his amended complaint,[2] Geman alleged that McLaury and Allen are in the business of offering clinics on colt starting and horsemanship and asked Geman to participate in such a clinic being run by McLaury at Allen's farm. The clinic had six horses and riders with varying degrees of experience. Geman alleged that he informed McLaury and Allen that he was inexperienced in the horsemanship techniques they used. During the clinic, one of the horses went out of control, causing the other horses to bunch together while their lead ropes were slack. Geman's leg became entangled in the lead rope of another horse and he was forced to jump from his horse, sustaining serious injuries.
¶3 Geman alleged that "Allen and McLaury had a duty to provide a fit and proper environment to participate in the clinic, and/or warn [Geman] of any dangerous conditions in participating in the clinic based upon the experience levels of the other riders and the degree of training received by other colts participating in the clinic." Geman alleged a breach of this duty and that McLaury further breached a duty of care toward Geman "by failing to oversee that the horses and riders were capable of participating in this clinic." Geman alleged that the "manner in which McLaury conducted the colt starting and horsemanship clinic amounted to willful and wanton disregard for the safety of Geman, which led to his injuries."
¶4 Allen and McLaury sought summary judgment on the ground that they were immune from suit under the equine immunity statute, Wis. Stat. § 895.481. The circuit court agreed and granted summary judgment on that basis.
¶5 We review decisions on summary judgment by applying the same methodology as the trial court. M & I First Nat'l Bank v. Episcopal Homes Mgmt., Inc., 195 Wis. 2d 485, 496, 536 N.W.2d 175 (Ct. App. 1995). That methodology has been recited often and we need not repeat it here except to observe that summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id. at 496-97.
¶6 Wisconsin Stat. § 895.481(2) grants immunity to persons who are either equine professionals, § 895.481(1)(d), or equine activity sponsors, § 895.481(1)(c), when they engage in equine activity, § 895.481(1)(b), if a person participating in the equine activity is injured as the result of an inherent risk of equine activities.[3] An equine immunity notice must be posted. Sec. 895.481(4). It is undisputed that the facts of this case implicate the equine immunity statute. The question is whether the summary judgment record establishes an exception to statutory immunity because Allen and McLaury acted "in a wilful or wanton disregard for the safety of the person [Geman]." Sec. 895.481(3)(d).
¶7 In his affidavit in opposition to summary judgment, Geman makes the following allegations. He attended and participated in the clinic using his own horse and equipment. He was not informed that beginners would be participating in the clinic. An Arabian horse was placed in the pen while the clinic was in session. Riders in the clinic were instructed to ride with lead ropes hanging loose, and had Geman known that inexperienced riders and such techniques were part of the clinic, he would not have participated. The Arabian went out of control while the lead ropes were slack and created the havoc which resulted in his injuries. Allen and McLaury knew that the Arabian was not a proper horse to be in the pen with other horses and riders because the Arabian was very high strung and easily spooked. McLaury was the only skilled rider in the ring instructing the clinic participants and he did not watch the other horses and riders when the Arabian went out of control. McLaury and Allen did not determine that all of the riders and horses were capable of participating in the clinic and no precautions were taken to insure the safety of the participants. McLaury's techniques should not be used with beginning riders.
¶8 At the summary judgment hearing, Allen and McLaury argued that they were immune from liability under the equine immunity statute because they were engaged in an equine activity. They argued that Geman's allegations fell within "inherent risk of equine activities." Wis. Stat. § 895.481(1)(e). They also argued that Geman's reliance on the willful or wanton conduct immunity exception was not borne out in the summary judgment record because Geman's affidavit merely alleged that a horse went out of control and did not allege willful or wanton conduct on the part of Allen or McLaury.
¶9 Geman countered that there were material factual disputes regarding willful or wanton conduct which precluded summary judgment on equine immunity grounds. In support of this claim, Geman cited: (1) the practice of letting the horses' lead ropes go slack and letting the horses wander around with riders, some of whom were inexperienced, aboard; (2) the placement of the high-spirited and easily spooked Arabian horse into the pen without warning or explanation to the riders, thereby creating a dangerous situation in which Geman was injured; and (3) the clinic was inadequately supervised. Geman further argued that whether McLaury and Allen engaged in willful or wanton conduct was a jury question.
¶10 In its memorandum decision granting summary judgment, the circuit court concluded that Geman's affidavit offered only conclusory statements and did not demonstrate the existence of any material factual disputes relating to the willful or wanton conduct exception to the equine immunity statute. Further, it was undisputed that Allen and McLaury were either engaged in an equine activity, Wis. Stat. § 895.481(1)(b), or were equine activity sponsors, § 895.481(1)(c), and that the required statutory notice was posted on Allen's property as required by § 895.481(4). Finally, the Arabian's participation in the clinic fell within the inherent risk of equine activities. The circuit court applied the equine immunity statute.
¶11 On appeal, Geman argues that there are material factual disputes relating to the decision to place the untrained and volatile Arabian into the pen which should have precluded summary judgment. He argues that while McLaury was instructing novice riders, he introduced the Arabian into the pen. Essentially, Geman argues that introducing the Arabian into the pen should not be considered an inherent risk of equine activity; it should be considered willful or wanton disregard for safety of others.
¶12 We disagree with Geman. The presence and conduct of the Arabian clearly falls within the inherent risks of equine activities. These risks include a horse's propensity to behave in a manner that may result in injury to a person, a horse's unpredictable reactions, and the potential for a participant in an equine activity to fail to control the horse. Wis. Stat. § 895.481(1)(e). All of these risks apply to the incident with the Arabian. In order to survive summary judgment and avoid statutory immunity, Geman had to allege material facts that McLaury and Allen acted "in a wilful or wanton disregard for the safety of the person." Sec. 895.481(3)(d). Geman's affidavit does not allege willful or wanton disregard or link the decisions and conduct of Allen and McLaury with this standard of conduct.
¶13 In his appellate briefs, Geman adds facts which were not set forth in his affidavit in opposition to summary judgment. In his appellant's brief, he alleges that "McLaury wanted the novice riders to see him break the Arabian horse, hoping that the stunt would serve as an inducement for one of the participants to purchase it." In his reply brief, Geman alleges that the Arabian was given to an amateur rider without determining her ability to safely manage the horse, which went out of control, and he reiterates his theory that McLaury wanted to sell the Arabian. These facts do not appear in Geman's affidavit in opposition to summary judgment, and counsel should not have recited them in his appellate briefs as if they did.
¶14 Finally, Geman argues that the circuit court should not have granted summary judgment because discovery had not yet occurred. Geman does not cite any authority for this proposition. At the summary judgment hearing, Geman complained that he had not conducted any discovery because he was waiting for the court's scheduling order. Geman filed his complaint on March 21, 2002; the summary judgment motion was filed on October 3, 2002. The motion was heard on December 19. The court responded that once the summary judgment motion was filed, Geman needed to gather facts to counter it, regardless of the status of the scheduling order. We agree with the circuit court's assessment of Geman's responsibilities in the face of a summary judgment motion.
¶15 Because we affirm the circuit court's grant of summary judgment on equine immunity grounds, we need not address the other grounds for liability.
By the Court.  Order affirmed.
NOTES
[1] All references to the Wisconsin Statutes are to the 1999-2000 version unless otherwise noted.
[2] The amended complaint was filed after the summary judgment materials were filed and the motion was argued. The allegation about willful or wanton disregard first appeared in the amended complaint; the original complaint did not contain this allegation. The parties do not dispute that willful or wanton disregard was at issue on summary judgment.
[3] "Inherent risk of equine activities" means a danger or condition that is an integral part of equine activities, including all of the following:

1. The propensity of an equine to behave in a way that may result in injury or death to a person on or near it.
2. The unpredictability of an equine's reaction to a sound, movement or unfamiliar object, person or animal.
3. A collision with an object or another animal.
4. The potential for a person participating in an equine activity to act in a negligent manner, to fail to control the equine or to not act within his or her ability.
5. Natural hazards, including surface and subsurface conditions.
WIS. STAT. § 895.481(1)(e).